SMITH, FRANK A., Associate Judge.
This is an appeal from a judgment and sentence entered in a lottery case. Caretha Byers was charged, in a four count information, with various violations of the gambling laws. Two of such counts were quashed on motion and the State abandoned a third thereby leaving one charging her with aiding and assisting in the setting up, promoting and conducting of a lottery for money. Trial was had, and the jury brought in a verdict of guilty. Judgment was entered and the sentence pronounced and defendant appeals.
Prior to defendant’s arrest, a Deputy Sheriff of Sarasota County presented one, John Jackson, to a Justice of the Peace of the First District of said county. Jackson at that time made the following affidavit :
“Before me, Geo. S. Foster, Justice of the Peace, First District, Sarasota County, Florida, personally came John Jackson, a resident of Sarasota County, Florida who, being duly sworn, says that on the 7 day of March, 1958, in the County and State aforesaid, he the said John Jackson, did then and there purchase a lottery ticket, yet to be played, commonly known as bolita from the said Caretha Byars and that said Caretha Byars and James McGriff has in her or his possession at 1528 — 7th Street in the City of Sarasota, in the County aforesaid lottery tickets commonly known as bolita.
“The said 1528 — 7th Street being the home of the said Caretha Byars and James McGriff as per 1957 (November issue) Telephone directory. Number painted in white above front door.
“From Sarasota County court house go north on highway No. 301 to 6th Street, turn left which is west on 6th Street to Seaboard Railway, turn right which is north to 7th Street then turn right which is east and go to the last house on left, which is the north side-of the street and which is numbered' 1528 — 7th St. written in white paint over front doorway contrary to the statute in such case made and provided, and against the peace and dignity of" the State of Florida.”
Said Justice of the Peace then issued the-following search warrant:
“In the Name of the State of Florida, to the Sheriff or any Constable of said County:
“Whereas John Jackson, a resident of Sarasota County, Florida has this-day made affidavit before me that he has reason to believe and does believe,, stating the facts on which he said belief is based, as follows: That he the said John Jackson did then and there purchase a lottery ticket, yet to be played, commonly known as Bolita, from the said Caretha Byars, and that the said Caretha Byars and James-McGriff has in her or his possession at 1528 — 7th Street, in the City of Sarasota in the county aforesaid, lottery tickets commonly known as Bolita. The said 1528 — 7th Street, being the home of the said Caretha Byars and James McGriff as per 1957 (November issue) telephone directory, with number painted in white above the front door.
“From the Sarasota County court house go north on highway No. 301 to 6th Street, turn left which is west on 6th Street to the Seaboard railway, turn right which is north to 7th street then turn right which is east and go to the last house on the left, which is on the north side of the street and which is numbered 1528 — 7th St. written in white paint over the front door.
“These are, Therefore, to Command you to apprehend and search the said *384 premises at 1528 — 7th Street, in the day time or in the night time and to apprehend and search any house or place in which it is concealed, or any vehicle, aircraft or water craft in which it may be found or from any person in whose possession it may be and if the same or any part thereof shall be found upon such search, that you bring the goods so found, and also the body of the said Caretha Byars and James McGriff before me, to be disposed of and dealt with according to law.”
Said warrant was apparently executed by one, Jack A. Royal, a Deputy Sheriff of Sarasota County, as appears from the Inventory attached to said Warrant, although the Sheriff’s, return on the warrant is not shown.
The evidence against defendant was based primarily upon the testimony of Deputy Sheriff Lonnie Selph, who was qualified as an expert on “Bolita” and other illegal lottery operations. That officer testified that, upon searching defendant’s premises, he found numerous carbon copies of “Bolita” tickets written by more than one person, a few original and carbon copies of other such tickets, and various sums of cash totalling $280.90.
Before trial, defendant attempted to require the State to produce the John Jackson named in and who made the above affidavit. Both officer Selph and Justice of the Peace Fosler stated that they knew Jackson and that such a man existed and appeared before Fosler. However, neither was able to tell where Jackson could be found.
The State’s evidence was obtained by virtue of a search and seizure under the above recited search warrant. Defendant interposed a timely motion to quash the warrant and suppress the evidence and based the attack upon three grounds, to-wit: (1) That it was not served by any of the officers mentioned in the warrant, that is the Sheriff or Constable or any police officer; (2) That the party named in the affidavit and search warrant is a fictitious person and that the name appearing therein was used as a subterfuge in an effort to evade the Constitution of the State of Florida, Sections 933.04, 933.05 and 933.06, Florida Statutes, F.S.A., and (3) That the search warrant is too general when searching a dwelling house.
The trial judge overruled this motion after hearing evidence in regard to John Jackson and his identity. The existence of such a person was amply shown and the Court fails to see that there was any violation of the mentioned sections of the statutes, unless the warrant failed to meet the statutory requirement for description of property seized.
As to the first ground of the motion the Court finds that the trial judge was correct in his ruling that the warrant was served by an authorized officer. The Court has been unable to discover from the record what officer executed the warrant, except that the inventory return was made by Jack A. Royal, described therein as the officer by whom the warrant was executed. From the testimony of George S. Fosler, Justice of the Peace who issued the warrant, it is shown that Lonnie Selph was apparently the same person who testified as Lonnie C. Selph and said he was a deputy sheriff. According to his testimony, armed with the warrant he and Mr. Jack Royal entered the front door and Mr. Bert Dixon was stationed at the back door. While Mr. Royal kept the defendant in the front room, Selph and Royal searched the house. It is clear that the •three participated in the execution of the warrant. While Royal is shown to have been a deputy sheriff, as also is Selph, the record is silent as to what office Dixon may have held, if any. He may have been a constable of Sarasota County or even Sheriff. As before mentioned in the inventory return Royal described himself as the officer who executed the warrant. As such deputy he was authorized to *385 execute the warrant, directed to the Sheriff or any Constable of the County. The denial of the motion on this ground was correct.
The only ground worthy of serious consideration is that challenging the sufficiency of description of the property to be seized. After a recital of the purchase of a lottery ticket commonly known as Bolita and that defendant and James Mc-Griff had in their possession at the described premises lottery tickets, commonly known as Bolita, the command of the writ requires the search of the house or place in which it may be concealed and if the same or any part thereof shall be found upon such search, to bring the goods so found before the magistrate. What was seized were lottery tickets (commonly known as Bolita), carbon copies of tickets and money in the aggregate sum of $280.90.
The warrant referred to two different classes of property, one describing the premises (real property) to be searched' and the other describing personal property. No other property was mentioned in the affidavit or warrant. The command of the writ was for the search of the real property which was particularly described, also for the seizure of it. The command was to seize some physical object or objects and could only refer to such as had been previously mentioned therein. The scope of the search was directed to be comprehensive “any house or place in which it may be concealed or any vehicle, aircraft or water craft or from any person in whose possession it may be and if the same or any part thereof shall be found upon such search “bring the goods so found and the body of the said Caretha Byars and James McGriff before me”. The only common sense construction that may be placed upon this command is to the effect that the officer executing the warrant was required to search for Bolita, lottery tickets, at the specified premises and such of same as he found should be taken into his possession and brought before the magistrate together with Caretha Byers and James McGriff. This attack upon the warrant also fails.
As to the portion of the ground that the search warrant “is too general when searching a dwelling house”, the search is limited to the premises at 1528-—7th Street in Sarasota County and the Court has already dealt with the other phase of description. This ground too was properly overruled.
Another assignment of error was refusal of Defendant’s motion to require the State to produce John Jackson who made the affidavit on which the search warrant was based. The only record of any such motion shown appears at page 32 of the transcript of the record and is framed to require the State to produce John Jackson or continue the case until such time as the defendant may be able to locate him. No authority requiring the State to produce such an informer has been offered, but appellant has referred without furnishing citation, to the Federal case Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, and quoted the opinion therein to the effect that where the disclosure of the informant’s identity is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the government may be required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication. This is no authority for the claim of right to require the State to produce such a witness. The evidence shows that the State co-operated with the defendant in the effort of her counsel to ascertain the identity of John Jackson. Instead of the State’s refusing to disclose his identity it seemed to freely afford to counsel all information it had as to his identity and whatever information it possessed about locating him. There was no error in overruling such a motion.
Lastly attention has been carefully given to the usual assignment of the in *386 sufficiency of the evidence, but without discussing the evidence of going into detail, let it suffice to say that a careful study of the evidence is convincing that the jury was warranted in finding a verdict of guilt upon the remaining count of the information. Accordingly the judgment is affirmed.
Affirmed.
ICANNER, C. J., and SHANNON, J., concur.