**UNITED STATES of America, Appellee,**

v.

**Jefferson Dwain BUTLER, Appellant.**

No. 85–2205.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1986.
Decided June 17, 1986.

Bennett S. Nolan, Fort Smith, Ark., for appellant.

Kathleen Felton, Asst. U.S. Atty., Washington, D.C., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.

BOWMAN, Circuit Judge.

Jefferson Dwain Butler appeals his conviction of unlawful possession of the component parts of a destructive device, a hand grenade, in violation of 26 U.S.C. §§ 5861(d) & 5871. We affirm.

Butler and his family resided in the compound of the Covenant, the Sword, and the Arm of the Lord (CSA), a paramilitary, white, Christian, supremacy group, the activities of which are described in some detail in *United States v. Ellison*, 793 F.2d 942 (8th Cir.1986). Pursuant to a search

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

warrant executed in April 1985, federal agents searched the CSA compound, including Butler's residence, and seized numerous items later introduced into evidence at Butler's trial. The warrant authorized the search of living quarters, the church, the radio and communications building, various other buildings, containers stored in the ground or in tunnels, and any place on the compound where illegal weapons could be buried or concealed. The items to be seized, according to the warrant, included illegal firearms, explosives, equipment to convert firearms from semi-automatic to automatic status or to make silencers, stolen jewelry and stolen automobiles, a knife, and records relating to the purchase and sale of firearms as well as to the identity of fugitives living in the compound. The evidence seized from Butler's residence included eighteen hand grenade casings, numerous hand grenade spoons and firing pins, blasting caps, safety fuses, smokeless powder, black powder, and Butler's driver's license.

After the search, a federal grand jury returned an indictment against Butler charging violations of 26 U.S.C. §§ 5861(d) & 5871. The District Court[1] denied Butler's motion to suppress evidence seized in the search of his residence, and the case went to trial. The jury found Butler guilty as charged. On appeal from his conviction, Butler challenges the District Court's denial of his motion to suppress evidence. He first contends that the search warrant was facially defective under the Fourth Amendment because it failed to describe with particularity the place to be searched and the items to be seized. Butler also asserts that the affidavit supporting the application for the warrant was insufficient to establish probable cause to search his particular residence.

In *Ellison*, we considered these same issues in the context of the search of the entire CSA compound. 793 F.2d 946–48.

Our reasoning and holdings there apply equally to this case. We now hold that the search warrant was valid not only as to the compound as a whole, *see id.*, at 947, but also as to Butler's individual residence within the compound.

Courts generally approve warrants that "provide reasonable guidance to the exercise of informed discretion of the officer executing the warrant." *United States v. Faul*, 748 F.2d 1204, 1219 (8th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 632 (1985). We take a totality-of-the-circumstances approach to reviewing whether probable cause existed to issue a search warrant and pay considerable deference to the magistrate's determination. *Ellison*, at 946. The general rule is that probable cause must exist to search each unit or separate residence of a multi-unit complex. *United States v. Whitten*, 706 F.2d 1000, 1008 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). This rule does not apply, however, if the premises are occupied in common or if the entire premises are suspect. *Id.; United States v. Gilman*, 684 F.2d 616, 618 (9th Cir.1982).

We agree with the District Court that in the present case the warrant was as specific as it could be under the circumstances. The entire CSA compound clearly was suspect. As set forth in the affidavit accompanying the application for the search warrant, the informants stated that most of the occupants of the compound were armed and were involved in making firearms or explosives. They also stated that caches of firearms and explosives were hidden throughout the compound, including the church and the living quarters; that the stolen jewelry was distributed to a number of CSA members, each living in a different residence; and that the buildings were used as common property, with the leaders regularly making and changing housing assignments. It was impossible for the law enforcement agents to know

---

1. The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

who lived in what dwellings within the compound because there were no individual property records or deeds, nor were there postal or utility records that would identify the occupants of the residences. Because everyone living in the compound was suspected of making or possessing illegal weapons and of storing them in their residences as well as in other places within the compound, the agents were justified in searching, as the warrant specified, all buildings and dwellings in which these items could be stored.

As to the items seized,[2] the specificity required in a warrant is flexible and will vary with the circumstances and the type of items involved. *Marvin v. United States,* 732 F.2d 669, 673 (8th Cir.1984); *United States v. DeLuna,* 763 F.2d 897, 908 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). In addition, under the plain view doctrine announced in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality), law enforcement officers can exceed the original scope of a search warrant where they are engaged in an otherwise lawful search and inadvertently discover contraband or other items the incriminating nature of which is immediately apparent. *United States v. Johnson,* 541 F.2d 1311, 1316 (8th Cir.1976). As the Supreme Court said in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality),

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" ... that certain items may be contraband or stolen property or *useful as evidence of a crime....* A "practical, nontechnical" probability that in-

criminating evidence is involved is all that is required.

*Id.* at 742, 103 S.Ct. at 1543 (citations omitted, emphasis added).

Butler contends that several items were seized from his residence and introduced at trial which were not specified in the search warrant: military hand grenade spoons, firing pins, primers, and safety pins; two empty cans of smokeless powder and one empty can of black powder; evidence tags describing three non-electric blasting caps and a length of white safety fuse; a Montana driver's license for Butler; a bill of sale and registration form for a Ford Pinto; a handbook entitled "Secret—Two Component High Explosive Mixtures and Improvised Shaped Charges"; and photographs of the interior and exterior of Butler's residence.[3] Under the above rules, we find that the District Court properly held that the items seized were either sufficiently described in the warrant or fell within the plain view exception to the search warrant requirement. Although the component parts of hand grenades (powder, firing pins, fuses, etc.) were not specifically set forth in the warrant, we believe the generic reference in the warrant to explosives amply covers such component parts. *See Spinelli v. United States,* 382 F.2d 871, 886 (8th Cir.1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The handbook entitled "Secret—Two Component High Explosive Mixtures and Improvised Shaped Charges," apparently was found among or in proximity to the component parts of the hand grenades; thus the incriminating nature of this item was readily apparent, and it properly was seized under the plain-view exception. Similarly, it was readily apparent that Butler's driver's license was evidence

---

**2.** The search warrant described the items to be seized as

> illegal firearms, explosives along with stolen jewelry and automobiles. Also, equipment used to make silencers and the conversion of weapons from semi-automatic to automatic status, records relating to the purchase and sale of firearms or the identity of fugitives on the property, and a weapon, that is, a knife, that may have been used in the murder of an

individual in Oklahoma as more specifically set out in the attached affidavit.

*Ellison,* Designated Record at 13.

**3.** It is not clear whether the photographs were found at Butler's residence or were taken by law enforcement agents during the search. For our purposes here, we assume they were found during the search.

tending to show the identity of an occupant of the residence where the grenade components were found, and the same conclusion applies to the bill of sale and registration form for the Ford Pinto. The photographs obviously had potential evidentiary usefulness as a visual depiction of the place where the grenade components were found.

Under the totality of the circumstances as described here and in *Ellison*, we conclude that the magistrate had a substantial basis for finding that probable cause existed for a search of the compound and of all dwelling places therein. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). We also hold that the warrant was sufficiently particular to withstand Butler's Fourth Amendment attack. Accordingly, we affirm Butler's conviction.